UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BENJAMIN GARNER, on behalf of Plaintiff and all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| MARC JONES CONSTRUCTION, L.L.C., and JOHN DOES 1-10, | ) ) ) |
| Defendants. | ) ) |

## COMPLAINT – CLASS ACTION

### INTRODUCTION

1.  Plaintiff Benjamin Garner brings this action against Defendants Marc Jones Construction, L.L.C., and John Does 1-10 to stop Defendants' practice of making phone calls to cellular telephones using an automated telephone dialing system, and to numbers on the National Do Not Call Registry, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and to obtain redress for all persons injured by its conduct.

### JURISDICTION AND VENUE

2.  This Court has federal question subject matter jurisdiction under 28 U.S.C. §§ 1337 (commerce) and 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, a federal statute. *Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740, 751-53 (2012); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005).

3.  The Court has personal jurisdiction over Defendant and venue is proper in this

District because Defendant Marc Jones Construction, L.L.C. is located in and does business in this District.

## PARTIES

4. Plaintiff Benjamin Garner is an individual who resides in Brazoria County, Texas.

5. Defendant Marc Jones Construction, L.L.C., is a Louisiana limited liability company. Its registered agent and address is Marc S. Jones, Sr., 22171 MCH Road, Mandeville, Louisiana 70471. Sunpro Solar SUNPRO ("Sunpro") is a registered trademark of Marc Jones Construction, L.L.C.

6. Defendants John Does 1-10 are other persons responsible for the calls complained of.

## THE TELEPHONE CONSUMER PROTECTION ACT ("TCPA"), 47 U.S.C. §227

7. Congress enacted the TCPA in 1991 in response to a growing number of consumer complaints regarding telemarketing robocalls.

8. Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243 (Dec. 20, 1991); *see also Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

9. Consumer complaints about this conduct have only increased since then. "If robocalls were a disease, they would be an epidemic." Rage Against Robocalls, Consumer

Reports (July 28, 2015). "Robocalls" are the #1 consumer complaint in America today.

10. The Federal Trade Commission (FTC) and Federal Communications Commission (FCC) regularly cite "unwanted and illegal robocalls" as their number-one complaint category. The FTC received more than 1.9 million complaints filed in the first five months of 2017 and about 5.3 million in 2016. The FCC has stated that it gets more than 200,000 complaints about unwanted telemarketing calls each year. These complaints are on top of the complaints each state AG's office receives and also does not include the millions of unreported calls.

11. In an effort to curb these unwanted calls, the TCPA regulates, *inter alia*, the use of automated telephone equipment (a/k/a "autodialers" or "robodialers") to make calls to any cellular telephone number. Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

12. In 2012, the FCC prohibited "any telephone call that includes or introduced an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any [cellular telephone number], other than a call made with the prior express written consent of the called party[.]" 47 C.F.R. § 64.1200(a)(2). This prior express written consent requirement became effective on October 16, 2013.

## FACTS RELATED TO PLAINTIFF GARNER

13. Plaintiff Benjamin Garner is the subscriber to cellular telephone number XXX-XXX-7640. Mr. Garner also pays the cell phone bills for his cell phone usage.

14. The number is a residential number, used primarily for nonbusiness purposes.

15. The number has been listed on the national "do not call" list since prior to March 1, 2016.

16. Marc Jones Construction, L.L.C. or an agent(s) on their behalf, operates a call center, where automated equipment is used to place large numbers of telemarketing calls. The equipment has the present capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers.

17. On July 30, 2019, Plaintiff Garner received an automated call from 281-430-1309. Mr. Garner answered the call. After a pause, a live caller came on the line and identified Sunpro Solar. Plaintiff Garner said he was not interested and terminated the call.

18. On January 30, 2020, Plaintiff Garner's cell phone received a automated call from 281-430-1433. Mr. Garner answered the call. After a pause, a live caller came on the line named John from "home improvement" calling to ask about solar needs and when he could schedule a time for an affiliate to contact Plaintiff back. Plaintiff Garner said he was not interested, asked the caller to stop calling and terminated the call.

19. Later on January 30, 2020, Plaintiff Garner received a call on his cell phone from 682-243-5184. Mr. Garner answered the call on his cell phone when it came in. Mr. Garner spoke with Mike with home solar who offered to have a contractor provide a free estimate for solar panels. Mr. Garner, determined to figure out the party responsible for these calls, scheduled an appointment and requested to be contacted by email.

20. Later that day on January 30, 2020, Plaintiff Garner received another call on his cell phone from 281-769-3523. Mr. Garner answered the call on his cell phone when it came in. Mr. Garner spoke with Ana Alvarado from Sunpro Solar who called to confirm an appointment.

Mr. Garner later received an email from sales@gosunpro.com.

21. Plaintiff may have received other unsolicited, automated telemarketing calls placed by or on behalf of Marc Jones Construction, L.L.C.

22. Plaintiff Garner has not consented to the receipt of any calls from Defendants.

23. Plaintiff has not provided his cell phone number to Defendants.

24. By calling Plaintiff Garner, Defendants caused Plaintiff and the putative class members actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited and harassing telephone calls, consumption of electricity in cost per-kilowatt required to recharge the cell phones, consumption of money or purchased blocks of calls, and wear and tear on telephone equipment. The calls took time to receive and Plaintiff's statutory right of privacy was invaded.

25. The FCC has also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115 (¶165) (2003).

26. Defendant Marc Jones Construction, L.L.C. is responsible for making or causing the making of unsolicited, automated telemarketing calls. On information and belief, the purpose of the calls is to solicit persons to buy and/or install and/or maintain solar panels and/or convert persons to using solar energy using Defendant's goods and services.

27. Defendant Marc Jones Construction, L.L.C., as the entity whose products or services were advertised, derived economic benefit from the phone calls.

28. On information and belief, the unsolicited, automated telemarketing calls were

made as part of a mass broadcasting of automated, unsolicited telemarketing phone calls.

29. On information and belief, Defendants have made unsolicited, automated telemarketing calls to cellular phones of at least 40 other persons.

30. There is no reasonable means for Plaintiff or other recipients of Defendants' unsolicited, automated telemarketing calls to avoid receiving them.

31. The TCPA was enacted to protect consumers from unsolicited phone calls exactly like those alleged in this case.

32. The calls were made to consumers who never requested to receive them, never engaged in any interaction with Defendants and are made on a repeat basis without consent.

33. Defendants either negligently or willfully violated the rights of Plaintiff and other recipients in placing the calls or arranging for the calls to be made.

## COUNT I – TCPA

34. Plaintiff incorporates by reference paragraphs 1-33.

35. The TCPA provides at 47 U.S.C. § 227(b):

**§ 227. Restrictions on use of telephone equipment**

**. . . (b) Restrictions on use of automated telephone equipment.**

**(1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States–**

**(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice–**

**(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or**

>   other radio common carrier service, or any service for which
>   the called party is charged for the call; . . .

36. The TCPA, 47 U.S.C. § 227(b)(3) further provides:

> **Private right of action.**
>
> **A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State–**
>
> > **(A)  an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,**
> >
> > **(B)  an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or**
> >
> > **(C)  both such actions.**
>
> **If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.**

37. A private right of action for "do not call" violations is conferred upon any person who has received "more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed" by the FCC.  47 U.S.C. § 227(c)(5) provides:

> **(5) Private right of action. A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State--**
>
> > **(A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,**
> >
> > **(B) an action to recover for actual monetary loss from such a**

> **violation, or to receive up to $ 500 in damages for each such violation, whichever is greater, or**
>
> **(C) both such actions.**
>
> **It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.**

38. Defendants and/or their agents utilized equipment that made the unsolicited telemarketing calls to Plaintiff and other members of the putative class who were on the Do Not Call Registry.

39. Defendants and/or their agents violated the TCPA by using equipment that placed automated calls to Plaintiff and other members of the putative class' cell phones.

40. Defendants made unsolicited automated telemarketing calls to cellular telephone numbers belonging to Plaintiff and other members of the class without their prior express consent.

41. By making unsolicited telemarketing calls to Plaintiff and the class members, using an automated dialing system and without prior express consent, Defendants violated 47 U.S.C. §227(b)(1)(A)(iii).

42. Plaintiff and the class members are entitled to statutory damages.

43. Plaintiff and the putative class members suffered actual damages in the form of monies paid to receive the unsolicited robocalls and his statutory right of privacy was invaded.

44. Defendants violated the TCPA even if their actions were only negligent.

45.     Defendants should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

46.     Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), Plaintiff Garner brings suit on behalf of the following classes:

> a.  The Do Not Call List class consists of (a) all persons (b) who had his, her or its telephone number(s) registered with the National Do Not Call Registry, (c) to which Defendants placed or caused to be placed more than one telephone call, (d) promoting Defendant Marc Jones Construction, L.L.C.'s goods or services, (e) within any 12-month period, and (f) who never provided prior express consent to receive such calls.
>
> b.  The Robocall class consists of (a) all persons who, on or after a date four years prior to the filing of this action (28 U.S.C. § 1658), (b) received a telephone call made by or on behalf of Defendant Marc Jones Construction, L.L.C., (c) placed using an automated dialer.

47.     The exact number of class members is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. Plaintiff alleges on information and belief, that there are more than 40 members of each class.  Class members can be identified through Defendants' and/or their agents' records.

48.     Plaintiff's claims are typical of the claims of other members of the class, in that Plaintiff and the class members sustained damages arising out of Defendants' uniform wrongful conduct, including the making of unsolicited telephone calls.

49.     Plaintiff will fairly and adequately represent and protect the interests of the class,

and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the class members, and Defendants have no defenses unique to Plaintiff.

50.  There are questions of law and fact common to the claims of Plaintiff and the class members, and those questions predominate over any questions that may affect individual members of the class. These include:

 a. Whether the equipment Defendants used to place the calls in question was an automatic telephone dialing system as defined by the TCPA;

 b. Whether Defendants systematically made automated calls to persons without prior express consent to receive such telephone calls;

 c. Whether Defendants systematically made telemarketing telephone calls to persons whose telephone numbers were listed on the National Do Not Call Registry;

 d. Whether Defendants violated the TCPA;

 e. Whether class members are entitled to damages, including treble damages based on the willfulness of Defendants' conduct.

51.  Class proceedings are also superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the class to obtain effective relief from Defendants' misconduct. Even if members of

the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties.  By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

52. Management of this class action is likely to present significantly fewer difficulties than those presented in many class actions, e.g., for securities fraud,

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class members and against Defendants for:

a. Statutory damages, 47 U.S.C. § 227(b)(3);

b. Actual damages;

c. An injunction restraining the conduct complained of;

d. Costs of suit;

e. Such other or further relief as the Court deems just and proper.


s / Garth J. Ridge
Garth J. Ridge

Garth J. Ridge
Bar Roll Number 20589
251 Florida Street #301
Baton Rouge, LA 70801
(225) 343-0700
(225) 343-7700
Email: garthridge@aol.com

Pro hac vice to be applied for:

Daniel A. Edelman
Cathleen M. Combs
Heather Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com

## **NOTICE OF ASSIGNMENT**

Please be advised that all rights relating to attorney's fees have been assigned to counsel.

                                        <u>s / Garth J. Ridge</u>
                                        Garth J. Ridge

## **DOCUMENT PRESERVATION DEMAND**

Plaintiff hereby demands that Defendants take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff. These materials are likely very relevant to the litigation of this claim. If Defendants are aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendants request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendants.

s / Garth Ridge
Garth Ridge